IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LYUBOV FILIMOSHYNA,

        Plaintiff,                               No. CIV S-08-2131 GGH

    vs.

MICHAEL J. ASTRUE,                    ORDER
Commissioner of
Social Security,

        Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is granted in part, the Commissioner's Cross Motion for Summary Judgment is denied in part, and this case is remanded pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

BACKGROUND

        Plaintiff, born April 18, 1958, applied on February 23, 2005 for disability benefits. (Tr. at 173.)   Plaintiff alleged she was unable to work due to diabetes, high blood pressure, glaucoma, pancreas problems, and high cholesterol.  (Tr. at 188.)  In a decision dated March 26,

1  2007, ALJ Peter F. Belli determined plaintiff was not disabled. (Tr. at 35-39.) Plaintiff appealed
2  and on August 20, 2007, the Appeals Council which remanded on various grounds. First, it
3  found that the ALJ decision was internally inconsistent in finding bilateral carpal tunnel
4  syndrome to be a severe impairment in the body of the decision, but failing to list it as a severe
5  impairment in the findings portion of the opinion. In this regard, the ALJ was instructed to
6  clarify the severity of this impairment. The ALJ was also directed to further consider plaintiff's
7  residual functional capacity and provide appropriate rationale with references in the record to
8  support the assessed limitations. The Appeals Council also found that the ALJ failed to assess
9  plaintiff's obesity in accordance with SSR 02-1p and was directed to do so. Finally, the Appeals
10 Council remanded for the ALJ to determine if the newly expanded record required a vocational
11 expert and if so to pose hypotheticals which reflected the record as a whole, obtain testimony as
12 to the effect of the assessed limitations on the occupational base, while also considering any
13 conflict between the DOT and the VE, and the numbers of jobs in the national economy.  (Id. at
14 26-27.) ALJ Belli issued a second decision on February 7, 2008. The ALJ made the following
15 findings:[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

>    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>    Step four: Is the claimant capable of performing his past

2

1. The claimant has not engaged in substantial gainful activity since February 23, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus type II, diabetic neuropathy, bilateral carpal tunnel syndrome, and obesity. (20 CFR 416.920(c)). These findings are supported by the treating source records and the findings of the consultative examiner.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently. She can sit 8 of 8 hours with normal breaks and stand/walk 8 of 8 hours with normal breaks.

5. The claimant is capable of performing past relevant work as a crane operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability as defined in the Social Security Act, since February 23, 2005 (20 CFR 416.920(f)), the date the application was filed.

(Tr. at 14-23.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the Decision's RFC Rested on Inappropriate Sources; B. Whether the ALJ Improperly Rejected the Treating Physician(s); and C. Whether the ALJ Improperly Discounted Plaintiff's Credibility.

---

work? If so, the claimant is not disabled. If not, proceed to step five.
  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

    A. Whether the Decision's RFC Rested on Inappropriate Sources

Plaintiff contends that the medical sources upon which the ALJ relied did not properly consider plaintiff's impairments, but paid only lip service to them. The sources questioned by plaintiff are consulting physician Dr. Martin and the SSA nonexamining physicians. In concluding that plaintiff could do medium work[2], plaintiff argues that these opinions failed to properly consider plaintiff's carpal tunnel syndrome, diabetic polyneuropathy, and obesity.

The problem here may be that when plaintiff presented to Dr. Martin on April 26, 2005, she listed her chief complaints as only "diabetes, high blood pressure and glaucoma," and failed to mention peripheral neuropathy or carpal tunnel syndrome. (Tr. at 269.) Secondly, Dr. Martin examined plaintiff's wrists and hands in any event, and found no abnormalities. (Id. at

---

[2] Although the ALJ found that plaintiff could do medium work, he also found that plaintiff could do her past work as crane operator, which is light work.

4

270.) Symptoms of carpal tunnel syndrome include burning, tingling or numbness of the palm or fingers. There may be a feeling of swelling although swelling may not be apparent. There may be decreased grip strength, or the inability to differentiate between hot and cold by touch. www.ninds.nih.gov. Here, Dr. Martin noted that plaintiff exhibited no pain or grimacing during the musculoskeletal exam. Range of motion in the right and left wrist was normal. (Id. at 270.) Plaintiff did not complain of any of the aforementioned symptoms, and her grip strength was 5/5 bilaterally. (Tr. at 270.) After the exam was completed, plaintiff was asked to verify that all desired items had been covered to her satisfaction, and plaintiff responded in the affirmative.[3] (Id. at 271.)

In any event, despite the lack of a diagnosis of carpal tunnel syndrome by Dr. Martin, the ALJ did rely on the treating records in acknowledging *moderate* carpal tunnel syndrome based on the 2006 nerve conduction studies. (Id. at 21.) (emphasis added.) The ALJ discounted this diagnosis, however, as the numbness in plaintiff's hands was helped by wrist splints which were prescribed at this time. (Id. at 21, 322.) The ALJ also noted that surgery had not been discussed, and more serious pain medication, such as narcotics, had not been prescribed. (Id. at 21.)

The neurological study referred to by the ALJ recommended only wrist splints on September 23, 2006, despite current reported symptoms of numbness and tingling in the hands and difficulty with fine finger movements. (Id. at 315, 317.) Plaintiff's history was also noted to include positive Tinel's and Palen's signs. (Id. at 313, 358.) At this time, plaintiff reported that she was experiencing no pain from her impairments. (Id. at 331.) Plaintiff was diagnosed with moderate carpal tunnel syndrome based on nerve, F-Wave and EMG studies. (Id. at 360-62.) A more recent report, dated October 25, 2007, although noting weakness and numbness in the

---

[3] Dr. Martin noted that although plaintiff was a reliable historian, neither she nor her husband spoke fluent English and no interpreter was present. (Id. at 269.)

5

hands, also noted that plaintiff described her level of pain as only 2 out of 10.[4]  (Id. at 365.)  There are very few other records of carpal tunnel syndrome, indicating that it was not very severe.  Dr. Zilber diagnosed it once on January 24, 2007, but did not recommend any treatment.  (Id. at 352.)  The most recent medical records, other than the aforementioned notes, barely mention carpal tunnel syndrome.  On January 24, 2007, it was noted, but no treatment recommendation was made.  (Id. at 352.)

Plaintiff testified that the reason surgery was not recommended for her carpal tunnel syndrome was because of her diabetes.  (Tr. at 95.)  If any physician recommended against surgery for this reason, such advice surely would have been noted in the records, and the court could not locate any recommendation to this effect.  See e.g. tr. at 321 (recommending only wrist splints).  Furthermore, it does not appear that cortisone injections were given to plaintiff, or that she was prescribed non-steroidal anti-inflammatory medications.  See www.orthopedics.about.com.

It is true that Dr. Martin did not diagnose diabetic polyneuropathy; however, this impairment or symptomatology also was not raised by plaintiff at this consultation.  Symptoms of this disease resulting from diabetes most commonly include pain in the leg or foot, but may also include numbness and tingling of extremities, decreased sensation, wasting of foot or hand muscles, indigestion, nausea, vomiting, diarrhea, constipation, dizziness, faintness, urinary incontinence, vaginal dryness and weakness.  www.diabetes.niddk.nih.gov.  At the exam, plaintiff complained only of fatigue, which by itself is not conclusive.  Furthermore, plaintiff denied any renal, retinal or peripheral vascular complications.  No end organ damage had been identified.  (Id. at 269.)  Dr. Martin noted no strength deficits in the upper or lower extremities.  (Id. at 270.)  Reflexes were normal as was light touch sensation in the upper and lower extremities.  (Id. at 271.)

---

[4] Despite this very low level of pain, Dr. Rafanov (for Dr. Greenberg), found that plaintiff could do less than the full range of sedentary work.  (Tr. at 366-67.)

Likewise, other records indicate that Neurontin[5] controlled the burning feeling in plaintiff's feet due to diabetic neuropathy. (Id. at 322.) In this regard, the ALJ discussed the lack of evidence of "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station as required under Listing 9.08." (Id. at 20.) The ALJ also noted the lack of evidence of end organ damage as a result of this impairment. (Id.)

Plaintiff, at a minimum, should have included the aforementioned problems in her oral history to the consulting physician. The ALJ did not have a duty to be plaintiff's advocate in meeting her burden. Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993). The claimant has the burden of presenting medical evidence demonstrating disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), (c), and 416.912(a), (c); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). Plaintiff has the ultimate burden of proof to produce the evidence that demonstrates she is disabled, 20 CFR § 404.1512(a); Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. Although the ALJ has the burden to develop the record, plaintiff has the burden to bring forward evidence of an impairment. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.

Dr. Martin did diagnose obesity as it was readily apparent, and recommended weight loss.[6] The only restriction based on this diagnosis was a restriction from squatting.[7] (Tr. at 271.) This internist did note that plaintiff "declined" to squat during the exam. (Id. at 270.)

\\\\\

---

[5] Neurontin is prescribed for neuropathic pain. www.en.wikipedia.org.

[6] Obesity was diagnosed throughout the treating records also, wherein it was recommended that plaintiff diet and exercise. See e.g. tr. 345, 348.

[7] Plaintiff contends that Dr. Martin did not provide a meaningful RFC, and therefore the only remaining RFC relied upon by the ALJ is that provided by the non-examining SSA physicians which does not amount to substantial evidence. Pl.'s Mot. at 7. Plaintiff's failure to bring her impairments to Dr. Martin's attention does not render his RFC assessment immaterial.

The ALJ properly considered obesity on remand, first finding it to be a severe impairment, and then considering it in combination with plaintiff's other impairments, referencing Social Security Ruling 02-1p and the regulations, and noting that it caused only a minimal limitation in functioning. He specifically found that obesity had not caused any end organ damage or other complications that would affect her residual functional capacity. (Id. at 22.) SSR 02-1p specifies that obesity may increase the severity of other impairments, but especially certain impairments such as musculoskeletal, respiratory, and cardiovascular impairments. (Id. at *5.) In this case, plaintiff's carpal tunnel syndrome was not affected by her obesity; however, her diabetes and complications therefrom in the form of diabetic neuropathy are directly related to weight. Nevertheless, diabetes can be controlled by medication, and it does not appear that plaintiff had been prescribed insulin until recently. (Id. at 20.) When doctors finally recommended it on March 26, 2007, plaintiff refused to start taking it. (Id. at 348.) Although most recently it was reported on August 31, 2007, that plaintiff's diabetes was not well controlled, (tr. at 345), what is significant is that this condition *can* be controlled. www.ndep.nih.gov. A condition which can be controlled or corrected by medication is not disabling. See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).

Plaintiff's next contention is that the ALJ improperly rejected plaintiff's treating sources. Plaintiff's regular physicians, Drs. Greenberg, Zilber, Rafanov, Tekola and Black, were all practicing out of Manzanita Medical Center.[8]

---

[8] It should be noted that all medical records, aside from Dr. Martin's consulting report and the reports of the SSA physicians, are treating records from Manzanita Medical Center, which was investigated by the SSA as having multiple patients who had been investigated for inconsistencies in their claims. (Tr. at 229, 247.) Physicians practicing at this center include Dr. Greenberg, Zilber, Rafanov, Tekola, and Black. Plaintiff's non-attorney representative in the administrative process was Svetlana Kumansky, whose numerous cases included a clear pattern of "inconsistencies between alleged functional limitations and other independently obtained

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[9] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

\\\\\
\\\\\

---

information." (Id.) Plaintiff was investigated initially by the Cooperative Disability Investigations Unit because her file was connected to both Manzanita Medical Center and Ms. Kumansky. (Id. at 230, 247.)

[9] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

2001),[10] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this regard, the ALJ stated,

> the treating physician has failed to cite clinical findings, x-ray results, or electrodiagnostic results that are consistent with the degree of limitations she and the claimant allege. He did not cite objective findings that relate to functional limitations and restrictions assessed; and his findings appear to be based upon the claimant's recitation of her subjective complaints. Although he performed nerve conduction studies in September 2006, it appears that he did not examine the claimant at the time of his statements, which suggests that his findings were an accommodation in part by the physician in an attempt to assist the claimant in her disability claim, rather than for treatment.

(Id. at 21.)

The ALJ also noted that Dr. Greenberg's assessment was not consistent with other findings, including those of Dr. Zilber. (Id.) Plaintiff takes issue with these reasons, noting that the ALJ lumped both Dr. Greenberg and Dr. Rafanov together because they worked at the same clinic, and termed them the findings of Dr. Greenberg. Plaintiff also notes that Dr. Zilber was a third treating physician, and not plaintiff's only treating physician.

The ALJ gave little weight to Dr. Greenberg's medical source statements only, but did consider his diagnosis of moderate bilateral carpal tunnel syndrome based on the objective nerve conduction studies. (Id. at 21.) It was permissible for the ALJ to rely upon selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting

---

[10] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

opinion constitutes substantial evidence).  He disputed this treating physician's extreme assessment of plaintiff's functional capacity in light of the objective evidence which did not indicate such a severe degree of limitation.

Dr. Greenberg opined on September 23, 2006 that plaintiff could do less than the full range of sedentary work.  (Id. at 332-33.)  The findings supporting this assessment were: "she gets easily tired on walking, her hands are weak, she has difficulty with fine finger movements."  (Id. at 331.)  Dr. Greenberg did reference the EMG and nerve conduction studies in support of his assessment that plaintiff could only lift less than five pounds occasionally, and it does appear that these studies were performed on the same day as the RFC assessment; however, it does not appear that Dr. Greenberg examined plaintiff at any time, but may have based his findings on his colleagues' treatment notes. (Tr. at 330-31, 336.)  If the record is complete, then Dr. Greenberg cannot be credited as a treating physician, and the ALJ was not required to give him as much weight.  In any event, this severe restriction on lifting is not consistent with *moderate* carpal tunnel syndrome, especially where Dr. Greenberg himself made a finding that plaintiff experienced no pain due to her impairments.  (Id. at 331.)  Dr. Greenberg also based his finding that plaintiff could only walk two to four hours and stand one to two hours on diabetic polyneuropathy, (tr. at 330); however, there is no record indicating he had treated plaintiff, and he did not point to other treating records to support this degree of limitation.  Furthermore, the assessment of less than sedentary work was based in part on plaintiff becoming easily tired on walking, which is based solely on plaintiff's subjective complaints.  See discussion *infra*.  When considered in conjunction with plaintiff's report of a very low level of pain (2 out of 10), the assessment of only sedentary work is inconsistent with the evidence.

Plaintiff points to page 355[11] of the transcript as an example of Dr. Greenberg's chart notes.  This note is unsigned, although it appears to be Dr. Greenberg's handwriting.

---

[11] This September 23, 2006 note is a duplicate of the note referenced earlier in this decision at tr. 317.

11

Nevertheless, even assuming that Dr. Greenberg had treated plaintiff, the problem is that the note's discussion of numbness and tingling in the hands and feet and trouble walking after two blocks, is based only on plaintiff's subjective reports.

> Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008).

Dr. Rafanov completed a residual functional capacity form on October 25, 2007, assessing plaintiff with the same restrictions as Dr. Greenberg's earlier assessment. This report also found that plaintiff could do less than sedentary work, but gave no reasons in support. (Id. at 366-67.) In regard to a lifting/carrying restriction, Dr. Rafanov noted only "abnormal EMG/NCS," but gave no date for this study, even though his form was completed a year after Dr. Greenberg's. (Id. at 364.) This opinion assessed plaintiff's pain at two out of ten. (Id. at 365.)

The ALJ did consider the objective studies conducted by plaintiff's physicians, such as the nerve conduction study and EMG related to her moderate bilateral carpal tunnel syndrome. (Tr. at 21.) He was not required, however, to accept the treating opinions on the ultimate issue of disability. "A statement by any physician that the claimant is disabled or unable to work is a conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of the [Act]." Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).

\\\\\

This court finds that the ALJ properly rejected the treating opinions, and that the ALJ's reliance on Dr. Martin's consulting opinion is based on substantial evidence.

B. <u>Past Work</u>

Although only indirectly raised by plaintiff, the residual functional capacity of plaintiff's past work as crane operator must be addressed. Plaintiff testified about her past work at the first administrative hearing. She stated that she operated a bridge crane on the roof of a factory, and it rolled along a track. (<u>Id.</u> at 107.) She sat in a chair and used levers to operate it. (<u>Id.</u> at 108-09.) At the second hearing, plaintiff testified that she had to lift a lot of heavy oil and a heavy hose to clean the crane. (<u>Id.</u> at 83.) A vocational expert testified at the first hearing only. After reviewing plaintiff's vocational history, he classified her past work as bridge crane operator, which is light work under the DOT listing. (<u>Id.</u> at 124.) Stooping and crouching are required occasionally or up to one third of the time for this job. DICOT 921.663-010 (overhead crane operator).[12]

In his second decision, the ALJ found that plaintiff could do her past work and classified it as medium based on plaintiff's report of the job requirements. (<u>Id.</u> at 23.) Whether the job was medium level in the Ukraine or whether it is light level in the United States is not significant as Dr. Martin found that plaintiff could do any work but should not squat. It is the ALJ's failure to incorporate this limitation into the job of crane operator that necessitates a

\\\\\

\\\\\

---

[12] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. It is used by the SSA to classify jobs as skilled, unskilled, or semiskilled. (<u>Id.</u>) Each job is assigned a number reflecting how long it generally takes to learn the job, termed "specific vocational preparation" ("SVP") time. (<u>Id.</u>) The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1).

1  remand.[13]

2          As Dr. Martin was the primary examining doctor relied upon by the ALJ, his
3  squatting limitation must be followed. Squatting is most similar to the term "crouching" as used
4  in the rulings. SSR 83-14 (defining crouching as "bending the body downward and forward by
5  bending both the legs and spine"). Based on the crane operator requirement of occasionally
6  crouching and stooping, plaintiff appears to be precluded from her past work as it is performed in
7  the United States.

8          Most sedentary and light jobs require no crouching and only occasional (very little
9  up to one third of the time) stooping, while medium work requires frequent stooping and
10 crouching. SSR 83-14. See also SSR 85-15, *7 (ability to occasionally stoop or crouch leaves
11 the sedentary and light occupational base virtually intact); 96-9p, *7 (crouching and other
12 postural limitations "would not usually erode the occupational base for a full range of unskilled
13 sedentary work significantly because those activities are not usually required in sedentary
14 work"); SSR 83-10, *6 and 83-14, *2 ("medium work usually requires frequent bending-
15 stooping," from one third to two thirds of the time). If the occupational base is significantly
16 eroded, such as where a plaintiff is completely unable to perform a nonexertional activity such as
17 crouching, a vocational consultant may be necessary. Iannopollo v. Barnhart, 280 F. Supp.2d 41,
18 50 (W.D. N.Y. 2003).

19         Because the crane operator job requires occasional stooping and crouching, the
20 ALJ erred in finding that plaintiff could do this past work. On remand, the ALJ may determine
21 that plaintiff can do other work based on the grids, such as sedentary work, or light work which
22 does not usually require crouching, or may determine to use a vocational expert.

---

[13] Plaintiff also takes issue with alleged internal inconsistencies in the SSA non-examining reports which found that plaintiff can do light work based on obesity and knee crepitus, (tr. at 273), and also assessed medium work with a limitation on squatting. (Id. at 283.) These reports are not inconsistent with Dr. Martin's report in regard to the squatting limitation. On remand, the ALJ will address the proper category of work for plaintiff with this preclusion.

C. Credibility Analysis Was Proper

Plaintiff contends that the ALJ found plaintiff to be not entirely credible without clear and convincing reasons.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. July 8, 2009); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Bunnell at 345-46. If the record contains objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See Vasquez, 572 F.3d at 591. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[14] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony

---

[14] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Plaintiff is required to show only that her impairment "could reasonably have caused some degree of the symptom." Vasquez, 572 F.3d at 591, *quoting* Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), Smolen, 80 F.3d at 1282. Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be specific, clear and convincing. Vasquez, 572 F.3d at 591.

        Plaintiff's credibility was properly questioned for the reasons pointed out by the ALJ. He first referred to the fraud investigation of plaintiff, prompted by a pattern of numerous inconsistencies in claimants represented by plaintiff's representative, and claimants who received medical care from Manzanita Medical Center. (Tr. at 16.) The investigation report, as noted by the ALJ, stated that plaintiff cooked, took care of her personal needs, handled all aspects of her diabetes testing and medication, cared for three children, including driving them to school, went grocery shopping, and managed family finances. It was also noted that her house was neat and clean. (Id., tr. at 227-33.) Plaintiff did not appear to be in pain or discomfort. (Id.) The ALJ noted that all of the aforementioned activities contradicted her testimony of extremely limited activity, pain, mental limitation and fatigue. (Id. at 22.) Plaintiff had testified that she could only lift small objects, had difficulty buttoning her buttons and cleaning and cooking, read a few times in a day, but for only ten to fifteen minutes at a time. (Id. at 83, 86, 89.) Plaintiff also testified at first that she last went to the grocery store a month before the hearing, but later testified that the last time she went to the store was two days earlier, explaining that she did not mention the recent visit because her husband drove her that time. (Tr. at 92-93.)

        The ALJ then discussed plaintiff's subjective complaints in light of the medical records. Although plaintiff complained of persistent debilitating fatigue, treatment notes rarely referred to fatigue, and did not note any observations of fatigue. (Id. at 18.) The ALJ also noted

that plaintiff's medications caused only mild side effects, and would not significantly interfere with plaintiff's activities.

In regard to plaintiff's alleged visual impairments, the eye treatment records indicated 20/20 vision with correction, no evidence of diabetic retinopathy, and visual acuity testing was normal. (Id. at 19.) Also contradicting plaintiff's claims of visual impairment was her regular reading of the bible, driving her children to school, shopping for groceries, and managing family finances. (Id.) The ALJ also discussed how plaintiff's alleged mental limitation was not substantiated by the record.

Additionally, the ALJ pointed out plaintiff's initial visit to the Social Security field office, during which she was interviewed, with the observation that she evidenced no difficulties in understanding, concentrating or communicating. (Id.)

In conclusion, the ALJ noted that the record did not indicate an ongoing or worsening condition that would reduce plaintiff's functioning, and plaintiff had not sought intense, ongoing treatment to reduce her symptoms. (Id. at 22.)

The fraud investigation report is instructive. Plaintiff worked as a crane operator in the Ukraine until 2003 when she retired. She immigrated to the United States in November, 2003, and applied for disability benefits, claiming an alleged onset date of February 9, 2005, only 15 months later, raising a question about her motives. (Tr. at 232, 193.) Her neighbors were interviewed and confirmed plaintiff's activities, including watering plants and taking her children to and from school. One neighbor was unaware of any mental or physical disabilities. (Id. at 231.)

Also significant is that plaintiff's application originally listed only diabetes, high blood pressure, glaucoma, pancreas problems and high cholesterol as impairments, and did not

\\\\\
\\\\\
\\\\\

mention carpal tunnel syndrome.[15] (Tr. at 188.) Nevertheless her claims impairments have transformed over time and those raised before the ALJ were carpal tunnel syndrome, diabetes, diabetic neuropathy, and obesity, which raises further suspicions about plaintiff's credibility. (Tr. at18.)

The court finds that the ALJ's credibility findings are supported by substantial evidence.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted in part, the Commissioner's Cross Motion for Summary Judgment is denied in part, and this case is remanded pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 10/28/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Filimoshyna2131.ss.wpd

---

[15] It is also curious to note that when plaintiff appeared for her consultative exam with Dr. Martin, she reported her medical problems as diabetes, high blood pressure, and glaucoma. She did not mention peripheral neuropathy or carpal tunnel syndrome to this doctor.